1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brynna D. Popka (SBN 310801)
bdp@mccunewright.com
Zachary S. Simpson (SBN 346142)
zss@mccunewright.com
MCCUNE LAW GROUP, APC
3281 East Guasti Road, Suite 100
Ontario, CA 91761
Telephone: 909-557-1250
Facsimile: 909-557-1275

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF MARK SPRATT, by and through successor in interest, JENNIFER SPRATT; JENNIFER SPRATT, individually,

Plaintiffs,

v.

COUNTY OF RIVERSIDE; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; and DOES 1 through 10, inclusive,

Defendants.

Case No.:

**COMPLAINT FOR DAMAGES**

1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);
2. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);
3. Public Entity Liability for Failure to Perform Mandatory Duty;
4. Violation of Eighth Amendment (42 U.S.C. § 1983);
5. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);
6. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);
7. Negligence – Wrongful Death;
8. Violation of California Civil Code §52.1 (Tom Bane Act);
9. Declaratory Relief (28 U.S.C. § 2201)

**DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, ESTATE OF MARK SPRATT, by and through successor in interest, JENNIFER SPRATT; JENNIFER SPRATT, individually, and for causes of action against the defendants and each of them allege as follows:

## I.     INTRODUCTION

1. At 2:00 am on January 12, 2023, the dimly-lit jailhouse beheld the broken body of 24-year-old Mark Spratt lying on the cold floor, two floors below his cell. It was a moment that begged the question: How had Mark Spratt ended up here? According to Sheriff CHAD BIANCO, Mark Spratt's plight was merely a consequence—perhaps an inevitable, unavoidable one--of being in Riverside County's custody. Surely, all Mark Spratt had to do to avoid this fate was not get arrested in the first place.

2. It is an inarguable pillar of our justice system that the accused stand innocent until proven guilty, and it is beyond cavil that sometimes, law enforcement arrests the wrong man.  This is one reason why we treat those arrested with dignity—but it is not the only reason. The measure of any society is how it treats its weakest, most vulnerable members. They remind us that as difficult and seemly as the world can be, our aspirations drive us to be better than our squalid conditions. To treat others as we would be treated reminds us of the humanity of others and, in doing so, honors our own.

3. We also expect our law enforcement officers to use particular care because the very act of law enforcement is so important to a free and just society.  We absolutely need police officers, jails, prisons, courts, probation officers, because society requires that its members follow the law and it requires just consequences for breaking the law.  Society needs law enforcement to treat those in its custody with dignity precisely because society needs to trust that law enforcement will work—that when law enforcement must be called upon to act on society's behalf, it will do so in a way that justifies the difficult and often harsh measures that must be taken to keep society safe.

4. What society cannot afford from law enforcement, on the other hand, are apathy and ignorance.  These are not legitimate law enforcement tactics.  To the contrary, they tarnish the very fabric of legitimate law enforcement. They tarnish the idea of justice, and they tarnish society's faith in our entire system.

5. It is in this context that this pleading returns to the case of Mark Spratt, and asks how he ended up broken, and later dead, on the floor of the Riverside County Jail. It is easy for society to look away from events like these, and certainly Riverside County law enforcement urges them to do so. The reason why courts exist is that no matter how easy it is for society to ignore the demands of justice, there is always a place for a neutral fact-finder to remind us of our responsibilities.

6. In Mark Spratt's case, consider these facts: (1) Mr. Spratt, a slender Caucasian with no violent criminal history, who found himself confined in a cell before being convicted of any crime. He was already in a perilous environment for someone accused of a non-violent crime, and in Mr. Spratt's case, there was no evidence he posed a threat to anyone. (2) Mr. Spratt was held not just in any cell, but his cellmate, MICKY PAYNE, was no ordinary inmate. Notorious in the facility, Mr. Payne was known to be a violent man with documented affiliations to African-American prison gangs, who are in turn notorious for their hatred of other races. This wasn't an incarceration; it was a lion's den, with malicious intent. Mr. Spratt was placed here not for rehabilitation but as a cautionary tale – a chilling warning that Riverside County would show no mercy even to those merely suspected of a crime.

7. Perhaps the most important fact to understand about Mr. Spratt's death is that it was far from lacking in precedent.  In 2022 alone, eighteen (18) individuals died while incarcerated at the Riverside County Jails, the highest number the County has experienced in the last fifteen (15) years. In response to these alarming numbers, the California Department of Justice launched an

investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices that resulted in so many deaths. The raw data and the per capita data make clear that incarceration in a Riverside County facility is increasingly dangerous. A potential death sentence for any pretrial detainee.

8. The neglect and disregard for human life exhibited by Riverside County law enforcement existed long before Mark Spratt's death, and despite their different factual backgrounds and circumstances, it is the single factor animating each and every one of these deaths.  Long before Mark Spratt's death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew (and themselves exhibited) reckless indifference to the safety and protection of inmates in the government's custody within the Riverside County correctional facilities, including the Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, the John J. Benoit Detention Center, and the Blythe Jail.

9. The individuals named in the present lawsuit were repeatedly put on notice of the reckless indifference to safety exhibited throughout all Riverside County correctional facilities; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP(OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's Department's obligations under the Eighth and Fourteenth Amendments; and through a

voluntarily entered Settlement Agreement required the Riverside County Sheriff's Department to remedy all deficiencies the *Gray* class action addressed.

10. Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to segregate the inmates pursuant to Penal Code § 4001 and § 4002, failed to classify persons in custody as required, failed to adequately assess the mental health of inmates, failed to intervene after being alerted of an assault, unlocked a cell door without adequate personnel in the area, and failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities. Thus, by the time Mark Spratt was taken into custody and placed at the Cois M. Byrd Detention Center, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – resulting in Mark Spratt's death on January 12, 2023.

## II.   JURISDICTION AND VENUE

11. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

12. This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

13. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and (2) because the Defendants reside within the district and the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## III.   GOVERNMENT CLAIM

14. On or about April 19, 2023, Plaintiff timely served a Notice of Claim on the County of Riverside pursuant to Gov. Code § 911.2 et seq., and the County of Riverside rejected the claim on April 24, 2023.

15. Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

16. With respect to the supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## IV. PARTIES

17. Decedent Mark Spratt was a 24-year-old son of JENNIFER SPRATT. At the time of his death, he was a pretrial detainee residing in the County of San Bernardino, California. The claims made by Plaintiff ESTATE OF MARK SPRATT, are brought by Mr. Spratt's successor in interest, JENNIFER SPRATT.

18. Plaintiff JENNIFER SPRATT, is and was, at all times relevant hereto, the natural mother of decedent Mark Spratt, and at all times relevant hereto was a resident of the County of San Bernardino, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent Mark Spratt on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

19. Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees and the Correctional Health Services

(hereinafter also "CHS") employees, complied with the laws and the Constitutions of the United States and of the State of California. Defendant COUNTY, through RCSD and CHS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities, including the Cois M. Byrd Detention Center (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LSCF"), John J. Benoit Detention Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

20. Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff, Coroner, and Public Administrator of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

21. Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant DELGADO was a policy making official for the COUNTY OF

RIVERSIDE. During the relevant time period, Defendant DELGADO was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

22. Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant KRACHMER was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Corrections Assistant Chief, Defendant EDWARD DELGADO. Defendant KRACHMER is being sued in his individual capacity.

23. Defendant DAVID HOLM (hereinafter also "HOLM") is and was at all times relevant herein the Corrections Captain at CBDC, one of the highest-level supervisory positions. During the relevant time period, Defendant HOLM was the Corrections Captain at CBDC, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the CBDC, including ensuring the safety of the inmates housed therein. As Corrections Captain, Defendant HOLM was responsible for supervision of RCSD and CHC employees and/or agents at the CBDC, and for the promulgation of the policies

and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD and CHC's employees alleged herein were committed. Defendant HOLM also directly supervised Defendant DOES 9 and 10. Defendant HOLM is being sued in his individual capacity.

24. Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER and HOLM will hereinafter be referred to as the COUNTY DEFENDANTS.

25. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

26. The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. On information and belief, DOES 1 through 10 were and still are residents of the County of Riverside, California. DOES 1 through 10 are sued in both their individual and official capacities.

27. At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

28. At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

29. Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of persons despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

30. Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Mark Spratt's constitutional rights and other harm.

31. Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

32. In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

33. In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

34. Pursuant to Gov. Code § 815.2, Defendant COUNTY is liable for any injury proximately caused by the acts or omissions of its employees within the scope of their employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. Plaintiff heretofore alleges that the wrongful acts by the individual Defendants and DOES 1 through 10, inclusive, caused the injuries to Plaintiffs as set forth in this complaint, in that these acts or omissions would

have given rise to a cause of action against them and in favor of Plaintiffs, independent of Gov. Code § 815.2.

35. Further, pursuant to Gov. Code § 820, Defendant COUNTY, is liable for injuries caused by their acts or omissions to the same extent as a private person. Plaintiffs further allege that Defendant COUNTY, caused Plaintiffs' injuries, as set forth in the complaint, and are therefore liable for damages arising out of those injuries as authorized by Gov. Code § 820.

## V. GENERAL ALLEGATIONS

36. On or about January 10, 2023, Mark Spratt was arrested on nonviolent charges relating to allegations of obtaining personal identifying information with an intent to defraud.

37. On or about January 12, 2023, at approximately 1:30 p.m., Mark Spratt was scheduled for an arraignment hearing. He never made it to the hearing.

38. On or about January 11, 2023, Mark Spratt, who was 24-years-old, Caucasian, measured 5'09" and weighed approximately 175 pounds, was assigned by the COUNTY to cell #43 at the Cois M. Byrd Detention Center, located at 30755-B Auld Road, Murrieta, California 92563. His cellmate, MICKY PAYNE, had a history of violent criminal offenses, including a felony conviction for assault with a deadly weapon causing great bodily injury. PAYNE was 33-years-old, African American, measured about 6'01" and weighed approximately 215 pounds. At one point, PAYNE had been placed on the U.S. Marshals' Service Most Wanted List.

39. On or about January 11, 2023, at approximately 7:20 p.m., PAYNE made a phone call from the COUNTY jail and "complained that he was housed with a 'White' inmate."

40. On or about January 12, 2023, at approximately 1:29 a.m., surveillance cameras captured what appeared to be silhouettes of the inmates moving within cell #43.

At approximately 1:31 a.m., inmates in neighboring cells notified deputies of a fight in cell #43. Demonstrating their lack of any regard for those in their custody, the deputies did no more than to turn on the lights and tell the inmates to "stop fighting." Of course, this was like ordering a jumbo jet with one wing to stop crashing. Mr. Spratt couldn't stop fighting because he had never started fighting—he was simply put in dangerous circumstances by others with complete indifference to his survival.

41. At approximately 1:35 a.m., Defendants unlocked and opened cell #43 from a central control area, but did not have any staff in the immediate area of the cell. No one intervened. At this point, Mark Spratt was observed on the cell floor, prostrate and making no movement. Mr. Spratt's actual condition at this stage is unknown, besides the fact that he was alive. Nevertheless, what happened next is even more blood-curdling.  Empowered by the unlocked cell and the complete lack of staff responding to the attack, PAYNE picked up Mr. Spratt, walked him out of the cell, and ***threw him over the second-floor walkway railing***. Mr. Spratt landed directly on his back, after which he was able to roll on his face. Approximately ***half-an-hour later***, Mr. Spratt was finally transported to the hospital in critical condition with multiple facial hematomas, an open fracture of the right distal tibia, L1 and C6 vertebral fractures and spontaneous eye-opening. Emergency life-saving measures were taken, including surgery, but tragically, Mark Spratt died at approximately 6:12 a.m. on January 12, 2023.

42. As one might imagine, Mr. Spratt screamed for help for a substantial amount of time, but no one bothered to intervene. And in some sense, why should they? In their minds, Mr. Spratt already had lost Riverside County's most gruesome lottery. Defendants, either intentionally or with a deliberate indifference to Mr. Spratt's well-being, not only abandoned him to die—they unlocked the cell

door that allowed PAYNE to carry his already broken body out of the cell and throw it off the second-floor landing.

43. Due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, Mark Spratt's dire need for intervention went unnoticed by the CBDC custody staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Mark Spratt.

44. Due to the COUNTY Jails patterns and practices of not properly segregating the inmates pursuant to Penal Code § 4001 and § 4002, Mark Spratt, who was taken into custody on nonviolent charges and had no prior history of violent offenses was housed with a convicted felon with known dangerous propensities who was merely awaiting sentencing.

45. Due to the great delays in intervention for Mark Spratt, and the failures on behalf of the CBDC custody staff in performing the required safety and welfare checks, as well as the failure to properly segregate the inmates pursuant to Penal Code § 4001 and § 4002, Mr. Spratt's injuries were too severe for the emergency medical professionals to treat.

46. Mr. Spratt was only 24-years-old when he died in custody at the Cois M. Byrd Detention Center. Unfortunately, he had a criminal history.  Fortunately, it was not a violent one.  He had not yet been arraigned for the identity theft charges, though it is difficult to conceive of the acts that would justify being subjected to this kind of torture while in custody. Mr. Spratt was not a threat to anyone.

47. None of this was true about Mr. Payne, who had a lengthy violent and criminal history:

   a. On or about September 12, 2011, he was arrested for domestic violence, inflicting corporal injury on a spouse and great bodily injury. He pled guilty to a felony for inflicting corporal injury on spouse/partner.

b. On or about October 5, 2012, PAYNE vandalized cars outside of a party in Montana. He also struck a person at the party. He was charged with criminal mischief in Yellowstone, Montana in May of 2015. He failed to appear at a hearing related to the charge and was also charged with bail jumping.

c. On or about November 11, 2013, he was arrested on a felony charge for robbery. PAYNE was acquitted following a trial.

d. On or about December 15, 2014, PAYNE was arrested on felony charges for inflicting corporal injury with prior conviction within 7 years and false imprisonment and a misdemeanor for maliciously defacing property. He pled guilty to all three charges.

e. On or about April 8, 2015, a fugitive warrant was issued to arrest PAYNE.

f. On or about March 3, 2016, PAYNE was arrested for battery and assault against a peace officer, firefighter, EMT or paramedic. He pled guilty to felony charges of battery, attempt to remove/take firearm from public or peace officer, and resisting or deterring the officer.

g. On or about August 21, 2021, PAYNE was arrested for assault with a deadly weapon to cause great bodily injury. He pled guilty to the felony on or about August 17, 2022. He had a sentencing hearing scheduled for January 10, 2023, regarding this felony plea – just two days before the brutal incident involving Mark Spratt.

48. As of the time of filing this Complaint, PAYNE awaits trial for murdering Mark Spratt. There is also an enhancement charge alleging that "the murder was intentional and involved the infliction of torture." (See PC 190.2(a)(18).)

49. Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910 et seq., and this action is timely filed within all applicable statutes of limitation.

50. This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.　FACTUAL ALLEGATIONS COON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

51. Based upon the principles established in *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell*, a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. The COUNTY Jails Experienced its Deadliest Year in 2022**

52. In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths. Prior to 2022,

Riverside County had not logged more than twelve (12) such deaths in any year since 2005.[1]

53. Mark Spratt's death came just after the deadliest year of in-custody deaths within the COUNTY Jails:

    a. Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

    b. Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

    c. Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

    d. Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

    e. Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose")[2]

    f. Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death: "Accident-Overdose")

    g. Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death: "Natural")

    h. Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

    i. Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of Death: "Accident-Overdose")

    j. Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

---

[1] See State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[2] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death. He had been in the facility for only six (6) days prior to being exposed to the dangers and risks permeating the CBDC, all of which ultimately resulted in his death.

k.  Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death: "Natural")

l.  Mario Solis (Date of Loss: September 3, 2022; Manner of Death: "Accident")[3]

m.  Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation"). Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender. Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

n.  Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

o.  Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful").[4] Pretrial detainee Ulyses Munoz Ayala was brutally killed by a known violent inmate, Erik Martinez, whom he was forced to share a cell with.

p.  Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

---

[3] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (i.e., cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap. Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a suicidal pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide. What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.
[4] See "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

q.  Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

54. The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three (3) pending. Seven (7) of the in-custody deaths occurred at the Cois M. Byrd Detention Center in Murrieta, California.

55. The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[5]

56. The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides. On November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at RPDC. From November 19, 2022 through November 23, 2022, Mr. Wall made repeated requests for psychiatric care and medication. Mr. Wall suffered from schizophrenia and suicidal ideations, which was known to the COUNTY custody and medical staff given his prior attempts to commit suicide at RPDC in 2015, as well as his extensive medical and mental health history. These requests were ignored by the custody and medical staff. On November 23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak with a psychiatrist. The custody staffer demanded to know why Mr. Wall needed to speak with a psychiatrist. When Mr. Wall hesitated, the custody staffer shouted, "Do what

---

[5] See "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

you gotta do! Stop pushing my fucking buttons or you're gonna give me a reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the second story of his housing module.

**B. The COUNTY Jails Are On Track to Claim Just As Many Lives in 2023**

57. Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails will have just as deadly of a year in 2023.

58. As of September of 2023, the COUNTY has already claimed the lives of eleven (11) persons who died while in the custody of the COUNTY:

    a. On January 12, 2023, pre-arraignment detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his convicted felon cellmate at CBDC.

    b. On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at RPDC. Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the RPDC. Mr. Viramontes was only 26 years old at the time of his death. An investigation into the manner and means of death remains pending.

    c. On February 6, 2023, pretrial detainee Jesus Rodriguez died in-custody due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

    d. On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

    e. On March 11, 2023, an unidentified pretrial detainee was found unresponsive in his cell at CBDC. Upon information and belief, the death was caused by hazards permeating the CBDC. An investigation into the manner and means of death remains pending.

f.   On May 22, 2023, pretrial detainee Ruben Guzman died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Mr. Guzman was in fear of his life and attempted suicide by jumping off of a top tier at the COUNTY Jails. Mr. Guzman survived the attempted suicide and was told by custody staff: "You should have gone headfirst." Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023. He died four days later on May 27, 2023. An investigation into the manner and means of death remains pending.

g.   On July 5, 2023, pretrial detainee Astrid Johnson died in custody at a hospital due to a "medical condition."

h.   On August 14, 2023, pre-arraignment detainee Steven Crawford was found unresponsive in his cell at JBDC. Custody staff and jail medical personnel attempted life saving measures, however, he was ultimately pronounced deceased. The investigation is ongoing.

i.   On August 27, 2023, pretrial detainee Tavae Stalks Walker was found unresponsive in his cell at LSCF. He was only 31 years old and the investigation is ongoing.

j.   On September 14, 2023, Damon Bietz was found unresponsive at RPDC in the intake area following being booked.

k.   On September 18, 2023, Jess Flores, an inmate at CBDC died in custody at a hospital. Investigation is ongoing.

l.   The Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2023 deaths of Kaushal Niroula, Ulyses Munoz Ayala, Mark Spratt, and

Ruben Guzman, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

## C. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability

59. Despite the record-braking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 125258[6] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[7]

60. The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

61. The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.[8]

62. The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their

---

[6] See Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[7] See Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[8] See "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed- report-inmate-deaths-state-time/8017820001/

custody as "sentenced" post-convicted prisoners.[9] Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.[10]

**D. California Department of Justice Launches Patterns and Practices Investigation into Record Breaking In-Custody Deaths at the COUNTY Jails**

63. On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[11] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died just days after being booked.[12] For

---

[9] *Id.*

[10] Pretrial detainees are perceived as innocent under the eyes of the law. Because they are mere detainees who are simply awaiting their day in court, the Constitution mandates that additional protective measures be put in place to ensure that the detainees are not harmed while in the government's custody. More specifically, the 14th Amendment requires that correctional facilities not be deliberately indifferent towards the detainees' safety and protection. See *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been convicted of a crime, they are deemed to be a post-conviction prisoner. While the Constitution too protects post-conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to cruel and unusual punishment while in the government's custody. See *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The end result is that the legal standard under which a civil rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction prisoner (i.e., subjective standard) rather than a pretrial detainee (i.e., objective standard). Upon information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as inmates who had already been "sentenced" in an effort to make it merely impossible for the families to establish liability because of the heightened standard of culpability imposed on civil rights cases filed by post-conviction prisoners.

[11] See State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[12] *Id.*

---

-23-
COMPLAINT

reference, San Diego County had 19 in-custody deaths in 2022, despite an average daily jail population of 500 more people than Riverside County.

64. During the press conference, the California Attorney General Rob Bonta expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the institutions that serve them […]. When some communities don't see or feel they are being treated equitably by law enforcement, it contributes to distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths and allegations of misconduct — too many families and communities in Riverside County are hurting and looking for answers. As part of my office's ongoing efforts to support constitutional policing, the California Department of Justice is opening a civil rights investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are worried about crime in your neighborhood, we all benefit when there is action to ensure the integrity of policing in our state."

65. In response to the California Department of Justice's civil rights investigation in the COUNTY Jails, SHERIFF BIANCO issued the following offensive statement illustrating indifference towards the lives lost in his jails: "This investigation is based on nothing but false, and misleading statements, and straight-out lies from activists, including their attorneys. This will prove to be a complete waste of time and resources."[13]

---

[13] See Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at
https://www.youtube.com/watch?v=6ttMVVLyfaQ

**E. RCSD's History of Indifference Towards Inmates Incarcerated at the COUNTY Jails**

66. For well over a decade now, the COUNTY's own Grand Jury, as well as several independent auditors, have come to the same conclusion: dangerous deficits in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

67. The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas.[14]

68. The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report.[15]

69. On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

70. The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

---

[14] See 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at
https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf
[15] See 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at
https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

a. RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

b. RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;

c. RCSD, by policy and practice, maintains and runs substandard medication management and administration;

d. RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

e. RCSD, by policy and practice, provides substandard medical care to inmates;

f. RCSD, by policy and practice, provides substandard mental health care to inmates;

g. On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

h. On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

i. On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum. As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

j.  Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* Class Action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

71. On September 6, 2021, the ACLU of Southern California wrote a letter with detailed appendices to the Office of the Attorney General, with a request for statewide investigation into the Riverside County Sheriff's Department.[16] The letter proclaims, "For years, this Department has demonstrated a pattern of racist policing practices, rampant patrol and jail deaths, and a refusal to comply with recommendations from oversight agencies and a court-mandated consent decree." In the letter, Cois M. Byrd, where Mark Spratt was killed, was singled out for mention of inmate-reported overcrowding and oversight evasion when the Board of State and Community Corrections (BSCC) inspected the facility in 2021: "Some individuals inside Cois Byrd Detention Center have indicated that a large portion of the jail's population may have been moved out to the recreational yard during the BSCC's inspection to hide the jail's obvious overcrowding."

## F. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His COUNTY Jails

72. A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to

---

[16] See https://www.aclusocal.org/sites/default/files/letter_to_ag_bonta_-_investigation_of_rsd4.pdf

terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id.*

73. The endemic, ongoing and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails. SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

74. SHERIFF BIANCO has made several public statements all of which serve as illustrations of his great indifference towards the inmates, most of whom are pretrial detainees and innocent under the eyes of the law, who are in the government's custody in his COUNTY Jails.

75. Despite the alarming trends in overdoses and in-custody deaths, SHERIFF BIANCO blames the decedents and their families for the in-custody deaths and overdoses in the COUNTY Jails – all of which are fully controlled and managed by him.

76. On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."[17]

77. Within fourteen hours of the article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:[18]

   a. Did they demand that their family members not commit suicide or consume drugs while they were in custody?

   b. Did they ever demand that their family members not commit crimes in the first place?

   c. Did their parents ever demand they take responsibility for their own actions?

   d. Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

78. SHERIFF BIANCO also blames the inmates themselves: "There are inmates that purposely get arrested just to smuggle drugs into jail. It is either for money, money on the outside, money or favor on the inside […] It's part of that culture of power inside the jails, and drugs are a part of it."[19]

---

[17] See "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise Facebook Page, September 16, 2022), available at: https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20county%20inmates%20died

[18] Notably, SHERIFF BIANCO deleted the post thereafter. SHERIFF BIANCO did this despite the post being highly relevant and material to supervisorial claims against him.

[19] See "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News, September 26, 2022),

79. In response to the Department of Justice's recent announcement about its decision to investigate the patterns and practices existing within the COUNTY Jails, SHERIFF BIANCO expressed the following indifference towards pretrial detainees dying at alarming rates within his COUNTY Jails: "Of course I'm not happy, this is going to waste our time. Every single one of these inmate deaths was out of anyone's control. The fact of the matter is that they just happened to be in our custody."[20]

## VII.   PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS
### (Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, MICKY PAYNE and DOES 1-10)

80. Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

81. Long before Mark Spratt's death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

82. Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; the federal class action *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody and medical

---

[20] See "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert Sun, March 5, 2023), available at https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-riverside-county-sheriffs-department/69967829007/

available at: https://www.mercurynews.com/2022/09/26/southern-california-jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/

staff's deliberate indifference towards the safety and protection of inmates; the warnings from the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement Agreement which the COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT remedy all of the deficiencies in healthcare and disability accommodations alleged in the *Gray* Class Action complaint.

83. Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, and DAVID HOLM have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

84. The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

## VIII.  FIRST CAUSE OF ACTION

### FAILURE TO PROTECT FROM HARM, VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (SURVIVAL ACTION – 42 U.S.C. § 1983)

### (By Plaintiffs Against All Defendants)

85. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

86. Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Mark Spratt's position.

87. Each Defendant could have taken action to prevent unnecessary harm to decedent Mark Spratt but refused or failed to do so.

88. By policy, procedure, and practice, Defendants COUNTY, RCSD and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the CBDC, as alleged above. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Mark Spratt. at CBDC.

89. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including CBDC, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

90. Defendant SHERIFF BIANCO failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including CBDC, who, upon information and belief, directed the deputies to falsify safety check logs and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO ratified their actions, and the practices used under his watch.

91. Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious harm.

92. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 failed to properly train and supervise RCSD custody and medical staff regarding policies, procedures,

and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including CBDC.

93. Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems, evidence a deliberate indifference to the risk of harm to inmates in their care, including Decedent Mark Spratt.

94. Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES' actions and inactions amounting to constitutional violations.

95. Defendants DOES 1 through 10's failure to properly classify persons at its facility, failure to conduct the required safety check of decedent Mark Spratt's housing unit on the date of his death, and opening the cell without adequate safety personnel in the immediate area, evidence a deliberate indifference to the risk of harm to inmates in their care, including decedent Mark Spratt.

96. Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES' failure to conduct safety checks and/or falsification of logs, failure to properly classify inmates and pretrial detainees, and opening cell doors without adequate personnel in the area to prevent further harm.

97. As a direct and proximate result of Defendants' conduct, the civil right of Mark Spratt, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Mark Spratt experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

98. Defendants subjected decedent Mark Spratt to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and

with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

99. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

100. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

101. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## IX.   SECOND CAUSE OF ACTION

### DEPRIVATION OF THE RIGHT TO FAMILIAL RELATIONSHIP WITH DECEDENT, VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS (42 U.S.C. § 1983)

### (By Plaintiff Jennifer Spratt As Against All Defendants)

102. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

103. The aforementioned acts and/or omissions of Defendants, DOES 1 through 10 in being deliberately indifferent to decedent Mark Spratt's protection, safety, and housing needs, violating decedent Mark Spratt's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Mark Spratt deprived Plaintiff JENNIFER SPRATT of her liberty interests in the parent-child relationship in violation of her substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

104. All of the acts of Defendants, DOES 1 through 10 and the persons involved were done under color of state law.

105.   The acts and omissions of each Defendant deprived Plaintiff JENNIFER SPRATT of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of her rights to a parent-child relationship with decedent Mark Spratt without due process of law by their deliberate indifference in denying Mark Spratt protection and safety while incarcerated at CBDC.

106.   Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and RCSD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody safe and adequate housing as stated above and incorporated herein.

107.   In addition, the training policies of the COUNTY and RCSD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to housing individuals in pretrial custody. Defendants and each of them, knew that its failure to adequately train its COUNTY Jails custody and staff, including other agents and employees, to make housing decisions based on safety of an individual, made it highly predictable that its custody and staff would engage in conduct that would deprive persons such as decedent Mark Spratt and thus Plaintiff JENNIFER SPRATT, of her rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

108.   Defendants COUNTY and RCSD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff JENNIFER SPRATT and decedent Mark Spratt by each individual Defendant's official policies and/or

longstanding practices or customs are so closely related to Mark Spratt's injuries and death and thus the deprivation of the rights of Plaintiff as to be the moving force causing those injuries.

109.   Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody and medical staff at the COUNTY Jails, including CBDC, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

110.   As a direct and proximate result of Defendants' conduct, the civil rights of Mark Spratt, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Mark Spratt experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

111.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

112.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

113.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

114.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## X.   THIRD CAUSE OF ACTION

### PUBLIC ENTITY LIABILITY FOR FAILURE TO PERFORM MANDATORY DUTY

### (By Plaintiffs Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT)

115.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

116.   California Penal Code § 4001 requires that:

117.   Each county jail must contain a sufficient number of rooms to allow all persons belonging to either one of the following classes to be confined separately and distinctly from persons belonging to either of the other classes:

1. Persons committed on criminal process and detained for trial;
2. Persons already convicted of crime and held under sentence;
3. Persons detained as witnesses or held under civil process, or under an order imposing punishment for a contempt.

118.   California Penal Code § 4002(a) mandates that: "Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed upon civil process, shall not be kept or put in the same room, nor shall male and female prisoners, except spouses, sleep, dress or undress, bathe, or perform eliminatory functions in the same room. However, persons committed on criminal process and detained for trial may be kept or put in the same room with persons convicted and under sentence for the purpose of participating in supervised activities and for the purpose of housing, provided, that the housing occurs as a result of a classification procedure that is based upon objective criteria, including consideration of criminal sophistication, seriousness of crime charged, presence or absence of assaultive behavior, age, and other criteria that will provide for the safety of the prisoners and staff."

119.   Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM violated Penal Code § 4001 and § 4002 when Defendants housed decedent, who had yet to be arraigned and was arrested on nonviolent charges and no violent criminal history, to be housed with a convicted felon with known dangerous propensities.

120.   Defendants, and each of them, have either failed to classify individuals for housing purposes at CBDC pursuant to law, or failed to have a classification system that was based upon objective criteria, including consideration of criminal sophistication, seriousness of the crime charged, presence or absence of assaultive behavior, age, and other criteria that would provide for the safety of the inmates and staff.

121.   As a result of Defendants failure to perform its mandatory duties, decedent Mark Spratt was gravely harmed when his cellmate brutally attacked him.

122.   Defendants COUNTY and RCSD's failure to perform its mandatory duties was a substantial factor in causing decedent Mark Spratt and Plaintiff's harm as alleged herein.

## XI.   FOURTH CAUSE OF ACTION

### VIOLATION OF EIGHTH AMENDMENT (42 U.S.C. § 1983)

### (By Plaintiffs Against All Defendants)

123.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.   Defendants, and each of them, were deliberately indifferent to the well-being of Mr. Spratt. Defendants knew of Micky Payne's prior violent criminal history, knew that Payne was a convicted felon who was once on a most wanted list, and knew that Payne did not want to be housed with a "White" cellmate.

125.   Despite having knowledge of the increased risk of harm to Mr. Spratt as a result of Payne's violent propensities and racial and gang ties, Defendants were deliberately indifferent to the well-being of Mr. Spratt because they chose to house him with a dangerous convicted felon, despite Mr. Spratt only being a detainee awaiting arraignment on nonviolent criminal charges.

126.   Notably, Defendants failed to conduct proper safety checks on Mr. Spratt and failed to intervene after being alerted of an altercation in the cell. Instead of investigating the noises and pleas for help, Defendants unlocked and opened the cell door without personnel in the area, creating an opportunity for Payne to carry Mr. Spratt out of the cell and throw him off the second floor.

127.   This failure to adequately supervise and protect Mr. Spratt, including by conducting cell checks even after knowing of the altercation, directly and proximately caused Mr. Spratt's death. Mr. Spratt thereby suffered pecuniary and non-pecuniary damages in an amount to be determined at trial.

128.   The conduct of Defendants and each of them, was cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and was willful, wanton, malicious, and done with a deliberate indifference for the rights and safety of Mr. Spratt, and therefor warrants an award of exemplary and punitive damages.

## XII.   FIFTH CAUSE OF ACTION

### MUNICIPAL POLICIES, CUSTOMS, PRACTICES CAUSING CONSTITUTIONAL VIOLATIONS (*MONELL* – 42 U.S.C. § 1983)

### (By Plaintiffs Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT)

129.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

130.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

a.   To deny pretrial detainees and other inmates access to safe and appropriate housing;

b.   To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

c.   To allow and encourage inadequate and unsafe housing for jail inmates and arrestees;

d.   To fail to train custody staff regarding administrative segregation of inmates;

e.   To allow, encourage, and require inmates arrested for nonviolent offenses awaiting arraignment to be housed with known convicted violent felons;

f.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling housing of persons;

g.   To cover up violations of constitutional rights by any or all of the following:

h.   By failing to properly investigate and/or evaluate incidents of violations of rights, including inmate assaults at the jail;

i.   By ignoring and/or failing to properly and adequately investigate and investigate and discipline unconstitutional or unlawful conduct by custodial personnel; and

j. By allowing, tolerating, and/or encouraging custodial personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

k. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, custodial personnel at the jail whereby an officer or member of the RCSD does not provide adverse information against a fellow officer, or member of the RCSD;

l. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (h) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

131.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER and DAVID HOLM:

a. To fail to properly and adequately hire, train, supervise, and monitor custodial personnel at the jails;

b. To fail to use appropriate and generally accepted law enforcement procedures for housing persons at the facility;

c. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning housing persons at the facility;

d. To cover up violations of constitutional rights by any or all of the following:

e. By failing to properly investigate and/or evaluate complaints or incidents regarding the housing of persons;

f. By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

g. By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

h. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

i. To allow, tolerate, and/or encourage a "code of silence" among custodial personnel at the COUNTY jails whereby custodial personnel does not provide adverse information against a fellow staffer;

j. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

132.   Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Mark Spratt, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

133.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other RCSD custody and medical staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that such policymakers have direct knowledge of the fact that the death of Mark Spratt was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/RCSD, and his rights to have safe housing. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Mark Spratt. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF

BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

134.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent Mark Spratt's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Mark Spratt to their wrongful conduct, depriving decedent Mark Spratt of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Mark Spratt, Plaintiffs and others would be violated by their acts and/or omissions.

135.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and RCSD, as described above, decedent Mark Spratt suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

# XIII.  SIXTH CAUSE OF ACTION

### SUPERVISORY LIABILITY CAUSING CONSTITUTIONAL VIOLATIONS (FAILURE TO PROPERLY TRAIN, SUPERVISE AND DISCIPLINE, 42 U.S.C. § 1983)

### (By Plaintiffs Against Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 7 through 10)

136.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

137.   At all material times, SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

138.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', decedent Mark Spratt's, and others' constitutional rights, which were thereby violated as described above.

139.   As supervisors, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CBDC and the rights to the serious medical needs of decedent Mark Spratt. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series

of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Mark Spratt of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Mark Spratt of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Mark Spratt's rights, and in fact did cause the violation of decedent Mark Spratt's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Mark Spratt's rights.

140.   The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Mark Spratt's, and others' constitutional rights, which were thereby violated as described above.

141.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Mark Spratt was not justified

or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Mark Spratt By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

142.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Mark Spratt's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

143.   Defendants subjected decedent Mark Spratt to their wrongful conduct, depriving decedent Mark Spratt of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Mark Spratt and others would be violated by their acts and/or omissions.

144.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## XIV.  SEVENTH CAUSE OF ACTION

### NEGLIGENCE – WRONGFUL DEATH

### (By Plaintiffs Against All Defendants)

145.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

146.   At all times relevant herein, Defendants, and each of them, owed a duty to Plaintiff to act with the ordinary care of reasonable persons. "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." CA Civ. Code § 1708.

147.   There is a special relationship between a jailer and inmate. Imposing on the former a duty of care to the latter. Inmates, like Mark Spratt, are vulnerable. And dependent. The relationship between then is protective by nature, such that the jailer has control over the inmate, who is deprived of the normal opportunity to protect himself from the harm inflicted by others.

148.   At all times, Defendants, and each of them, owed Plaintiffs and decedent Mark Spratt the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

149.   At all times, these Defendants owed Plaintiffs and decedent Mark Spratt the duty to act with reasonable care.

150.   These general duties of reasonable care and due care owed to Plaintiffs and decedent Mark Spratt by these Defendants include but are not limited to the following specific obligations:

   a.   To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

   b.   To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in pretrial custody status who is suspected of a nonviolent offense;

   c.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

   d.   To refrain from abusing their authority granted them by law;

   e.   To refrain from violating Claimant's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law;

   f.   To use separate housing when necessary to prevent harm to a person or as required by law;

   g.   To intervene or halt an attack on a person when it becomes reasonably apparent that an assault has occurred;

   h.   To refrain from unlocking a cell door without adequate security personnel in the area.

   i.   To examine, treat, monitor, prescribe for and care for Decedent and to provide him with timely medical attention.

151.   Defendants, DOES 1 through 10, through their acts, omissions, negligence, carelessness, recklessness, unskillfulness, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Mark Spratt.

152.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

153.   As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Mark Spratt sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## XV.   EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 (TOM BANE ACT)

### (By Plaintiff Estate of Mark Spratt Against All Defendants)

154.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

155.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20, *et. seq.*

156.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Mark Spratt was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Mark Spratt's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to

the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b. The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d. The right to be housed and confined separately as required by California Penal Code §4001 and §4002.

157. Defendants' violations of decedent Mark Spratt's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[21] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Mark Spratt's rights as described above, Defendants violated Mark Spratt's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to Decedent's rights to be housed or confined in a separate area from a convicted felon of violent crimes while Mark Spratt was waiting to be arraigned on non-violent charges;

b. With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

---

[21] See *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); see also, *Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving *M.H., supra*.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

c. Subjecting Decedent to ongoing violations of his rights causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

d. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

158. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Mark Spratt's rights, or to any legitimate and lawful jail or law enforcement activity.

159. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

160. Further, each Defendant violated decedent Mark Spratt's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

161. Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

162. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Mark Spratt's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## XVI.  NINTH CAUSE OF ACTION

### DECLARATORY RELIEF (28 U.S.C. § 2201)

### (By Plaintiffs Against All Defendants)

163.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

164.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

165.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them, as follows:

A.  Wrongful death of Mark Spratt, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.  Mark Spratt's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.  Violation of Mark Spratt's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.  Mark Spratt's loss of life, pursuant to federal civil rights law;

F.  Mark Spratt's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G. General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H. Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I. Punitive damages as to individual peace officer defendants;

J. Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K. Penalties under the Tom Bane Act;

L. Interest; and

M. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.


Dated:  October 12, 2023                    MCCUNE LAW GROUP, APC


                                             By: _____
                                                 Brynna D. Popka
                                                 Zachary S. Simpson
                                                 Attorneys for Plaintiff

1

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  October 12, 2023                                        MCCUNE LAW GROUP, APC

By:_____
          Brynna D. Popka
          Zachary S. Simpson
          Attorneys for Plaintiff