UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-2096 JGB (KKx)** | Date | February 29, 2024 |
|---|---|---|---|
| Title | ***Estate of Mark Spratt, et al. v. County of Riverside, et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendants' Motion to Dismiss (Dkt. No. 17); and (2) VACATING the March 4, 2024 Hearing (IN CHAMBERS)**

Before the Court is a motion to dismiss plaintiff's first amended complaint brought by defendants County of Riverside ("County"), Riverside County Sheriff's Department ("RCSD"), Sheriff Chad Bianco ("Bianco"), and James Krachmer ("Krachmer"), pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Motion," Dkt. No. 17.) The Court determines this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion. The Court **VACATES** the March 4, 2024 hearing.

## I. BACKGROUND

On October 12, 2023, plaintiffs Estate of Mark Spratt, by and through successor in interest, and Jennifer Spratt (collectively, "Plaintiffs") filed a complaint against the County, RCSD, Bianco, Krachmer, Edward Delgado ("Delgado"), David Holm ("Holm"), and Does 1 through 10. ("Complaint," Dkt. No. 1.) Plaintiffs filed a first amended complaint on December 18, 2023. ("FAC," Dkt. No. 15.) The FAC alleges nine causes of action: (1) failure to protect from harm under the Fourteenth Amendment, 42 U.S.C. § 1983 ("Section 1983"); (2) deprivation of the right to familial relationship with decedent under Section 1983; (3) public entity liability for failure to perform mandatory duty; (4) violation of Eighth Amendment under Section 1983; (5) a Monell claim for unconstitutional policies, practices, and customs under Section 1983; (6) failure to train, supervise and discipline under Section 1983; (7) negligence –

wrongful death; (8) violation of California Civil Code § 52.1 ("Bane Act"); and (9) declaratory relief pursuant to 28 U.S.C. § 2201. (FAC.)

On January 16, 2024, the County, RCSD, Bianco, and Krachmer (collectively, "Defendants") moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Motion.) In support of the Motion, Defendants submitted the declaration of Lacey Sipsey. ("Sipsey Decl.," Dkt. No. 20 at 21.)

On February 5, 2024, Plaintiffs opposed the Motion. ("Opposition," Dkt. No. 21.) Defendants replied on February 14, 2024. ("Reply," Dkt. No. 23.)

## II.    FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

On or about January 10, 2023, Mark Spratt ("Decedent") was arrested on nonviolent charges relating to allegations of obtaining personal identifying information with an intent to defraud. (FAC ¶ 36.) On or about January 12, 2023, at approximately 1:30 p.m., Decedent was scheduled for an arraignment hearing. (Id. ¶ 37.) On or about January 11, 2023, Decedent, who was 24 years-old, Caucasian, measured 5'09" and weighed approximately 175 lbs., was assigned by the County to cell #43 at the Cois M. Byrd Detention Center ("CBDC") in Murrieta, California. (Id. ¶ 38.) Decedent's cellmate, Micky Payne ("Payne") had a history of violent criminal offenses, including a felony conviction for assault with a deadly weapon causing great bodily injury. (Id.) Payne was 33 years-old, African American, measured about 6'01" and weighed approximately 215 lbs. (Id.) At one point, Payne had been placed on the U.S. Marshals' Service Most Wanted List. (Id.) Payne had a sentencing hearing scheduled for January 10, 2023 regarding his August 17, 2022 felony plea as to the assault with a deadly weapon. (Id. ¶ 47.)

On or about January 11, 2023, at approximately 7:20 p.m., Payne made a phone call from the County jail and "complained that he was housed with a 'White' inmate." (Id. ¶ 39.) On or about January 12, 2023, at approximately 1:29 a.m., surveillance cameras captured what appeared to be silhouettes of the inmates moving within cell #43. (Id. ¶ 40.) At approximately 1:31 a.m., inmates in neighboring cells notified deputies of a fight in cell #43. (Id.) The deputies turned the lights on and told the inmates to "stop fighting" but did nothing more. (Id.) At approximately 1:35 a.m., Defendants unlocked and opened cell #43 from a central control area but did not have any staff in the immediate area of the cell—no one intervened. (Id. ¶ 41.) At this point, Decedent was observed on the cell floor, prostrate and making no movement. (Id.) Decedent's actual condition at this stage is unknown, besides the fact that he was alive. (Id.)

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Payne then picked up Decedent, walked him out of the cell, and threw him over the second-floor walkway railing.  (Id.)  Decedent landed directly on his back, after which he was able to roll on his face.  (Id.)  Approximately half an hour later, Decedent was finally transported to the hospital in critical condition with multiple facial hematomas, an open fracture of the right distal tibia, L1 and C6 vertebral fractures and spontaneous eye-opening.  (Id.) Emergency life-saving measures were taken, including surgery.  (Id.)  Decedent died at approximately 6:12 a.m. on January 12, 2023.  (Id.)

Defendants, either intentionally or with a deliberate indifference to Decedent's well-being, not only abandoned him to die—they unlocked the cell door that allowed Payne to carry his already broken body out of the cell and throw it off the second-floor landing.  (Id. ¶ 42.) Due to the County jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, Decedent's dire need for intervention went unnoticed by the CBDC custody staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Decedent.  (Id. ¶ 43.)  Due to County jails patterns and practices of not properly segregating the inmates, Decedent, who was taken into custody on nonviolent charges and had no prior history of violent offenses was housed with a convicted felon with known dangerous propensities who was awaiting sentencing.  (Id. ¶ 44.)  Due to the great delays in intervention for Decedent, and the failures on behalf of the CBDC custody staff in performing the required safety and welfare checks, as well as the failure to properly segregate the inmates, Decedent's injuries were too severe for the emergency medical professionals to treat.  (Id. ¶ 45.)

Decedent had a non-violent criminal history.  (Id. ¶ 46.)  Payne had a lengthy violent and criminal history spanning from September 2011 through August 2021.  (Id. ¶ 47.)  Payne currently awaits trial for murdering Decedent—there is an enhancement charge alleging that "the murder was intentional and involved the infliction of torture."  (Id. ¶ 48.)  Decedent's death came just after the deadliest year of in-custody deaths within the County jails—seven of the in-custody deaths occurred at CBDC.  (Id. ¶¶ 54-55.)

### III.   LEGAL STANDARD

**A.      Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.      Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

**IV.   DISCUSSION**

Plaintiffs bring nine causes of action. (See FAC.) Plaintiffs assert: (1) failure to protect from harm under the Fourteenth Amendment, Section 1983 ("Claim One"); (2) deprivation of the right to familial relationship with decedent under Section 1983 ("Claim Two"); (3) public entity liability for failure to perform mandatory duty ("Claim Three"); (4) violation of Eighth Amendment under Section 1983 ("Claim Four"); (5) a Monell claim for unconstitutional policies, practices, and customs under Section 1983 ("Claim Five"); (6) failure to train, supervise and discipline under Section 1983 ("Claim Six"); (7) negligence – wrongful death ("Claim Seven"); (8) violation of the Bane Act ("Claim Eight"); and (9) declaratory relief

---

pursuant to 28 U.S.C. § 2201 ("Claim Nine"). (FAC.) Defendants move to dismiss all causes of action for failure to state a claim under Rule 12(b)(6). (See Motion.)

## A. Qualified Immunity

Defendants argue that they are entitled to qualified immunity from Plaintiffs' claims. Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). "An officer will be denied qualified immunity in a [section] 1983 action only if (1) the facts alleged, taken in light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011).

"Qualified immunity is an affirmative defense that must be raised by a defendant." Groten v. California, 251 F.3d 844, 951 (9th Cir. 2001). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016) (internal quotations and citations omitted). Qualified immunity is "generally better addressed at summary judgment." Speer v. Cty. of San Bernardino, 2020 WL 3882940, at *4 (C.D. Cal. May 4, 2020). A defendant who seeks qualified immunity at the motion to dismiss stage is asking a court "to decide far-reaching constitutional questions on a nonexistent factual record, even where…discovery would readily reveal the plaintiff's claims to be factually baseless." Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004). The Ninth Circuit has emphasized that "while government officials have the right… to raise and immediately appeal the qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case" because it may "waste…judicial resources" and develop "legal doctrine that has lost its moorings in the empirical world." (Id.)

The Court declines to determine whether Defendants are entitled to qualified immunity without a more thorough factual record than the one currently before the Court. The Court therefore **DENIES** the Motion as to qualified immunity.

## B. Claims One and Two: Fourteenth Amendment Claims

Defendants argue that Plaintiffs have failed to plead sufficient facts to support the Section 1983 claims for failure to protect from harm and deprivation of the right to familial relationship with Decedent. (Motion at 7-11.)

A pretrial detainee has a substantive due process right under the Fourteenth Amendment to be protected from harm while in custody. Castro v. City of Los Angeles, 833 F.3d 1060, 1067

---

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk mg

(9th Cir. 2016).  The elements of a pretrial detainee's failure-to-protect or medical care claim against an individual defendant pursuant to the Fourteenth Amendment are:

   (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

   (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

   (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

   (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); see Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018).  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case."  Castro, 833 F.3d at 1071 (internal citation and quotation omitted).  In the Ninth Circuit, such Fourteenth Amendment claims are evaluated under an objective deliberate indifference standard.  Vasquez v. County of Santa Clara, 803 Fed. App'x 100, 102 (9th Cir. 2020) (quoting Gordon, 888 at 1124–25).

Here, Plaintiffs do not allege that any of the Defendants made an intentional decision with respect to the conditions under which Decedent was confined.  It is not clear to the Court which, if any of the Defendants had control over the conditions of Decedent's confinement.  Moreover, Defendants argue that the "sequence of allegations and lack of delineation between Defendants makes it unclear what actions were and were not taken, and who, if any should be liable." (Motion at 9.)  Defendants move to dismiss Plaintiffs' claim for deprivation of the right to familiar relationship with Decedent on the grounds that Plaintiffs do not identify or name the individual defendants involved who allegedly placed Decedent and Payne in the same cell, nor do Plaintiffs identify or name the individual defendants who allegedly opened the cell door.  (Motion at 10.)  The Court agrees and notes that Plaintiffs also fail to name the individual defendant who allegedly failed to conduct a safety check.  Without this information, it is impossible for the Court, and Defendants, to properly understand the factual allegations supporting the claims as to each Defendant.

As to Claim Two, the Ninth Circuit has recognized that parents and children have a Fourteenth Amendment substantive due process right to the companionship and society of one another.  Lee v. County of Los Angeles, 2018 WL 6016992, *3 (C.D. Cal. Mar. 6, 2018) (citing Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010)).  If Defendants' conduct, when viewed in the light most favorable to Plaintiffs, deprived Plaintiffs of their familial interest in a manner that "shocks the conscience," then Defendants' conduct "is cognizable as a violation of due process."  Hayes v. County of San Diego, 736 F.3d 1223, 1230 (9th Cir. 2013) (quoting Wilkinson, 610 F.3d at 554)).

---

However, based on the above analysis, the Court finds that Plaintiffs do not sufficiently allege which Defendants engaged in what action, or inaction that caused harm to Decedent. As such, the Court cannot assess which Defendants' conduct, if any, shocked the conscience. Accordingly, the Court **DISMISSES** Plaintiffs' first and second claims **WITH LEAVE TO AMEND**.

## C. Claim Three: Public Entity Liability against County and RCSD

Plaintiffs bring a claim for public entity liability for failure to perform mandatory duty against the County and RCSD ("Entity Defendants"). (FAC ¶¶ 120-126.) Defendants argue that (1) there are no factual grounds in the FAC to assert this cause of action; and (2) the County and RCSD are immune from Plaintiffs' California state law claims for public entity liability pursuant to California Government Code, § 844.6. (Motion at 12.)

The Court first addresses Defendants' immunity argument. California Government Code Section 844.6 provides that "a public entity is not liable for . . . an injury to a prisoner." Cal. Gov. Code § 844.6. As courts have consistently held, Section 844.6 "precludes actions against public entities for injuries to prisoners." May v. County of Monterey, 139 Cal. App. 3d 717, 717 (1983) (holding that Section 844.6 precluded a wrongful death action against a county); Lawson v. Superior Court, 180 Cal. App. 4th 1372, 1383 (2010) ("Although a public entity may be vicariously liable for the acts and omissions of its employees . . . that rule does not apply in the case of injuries to prisoners.") (emphasis in original).

Plaintiffs oppose on the grounds that the medical care exception to exemption applies. (Opposition at 18); see Cal. Gov. Code § 845.6; see also Barry v. County of Riverside, 2022 WL 2063247, at *6 (C.D. Cal. May 11, 2022). Although Cal. Gov. Code § 844.6 grants immunity to public entities for any injury to a prisoner, it is subject to multiple exceptions. See Cal. Gov. Code § 844.6. One exception—Cal. Gov. Code § 845.6—provides liability for public entitles and employees only if "the employee knows or has reason to know that the prisoner is in need of immediate medical care and [] fails to take reasonable action to summon such medical care." Cal. Gov. Code § 845.6 (emphasis added); Lawson v. Superior Ct., 180 Cal. App. 4th 1372, 1384 (2010). Liability under section 845.6 is "limited to serious and obvious medical conditions requiring immediate care." Lawson, 180 Cal. App. 4th at 1385. Liability depends on an outright "failure to summon medical care," not on "negligence in providing care." Castaneda v. Dep't of Corr. & Rehab., 212 Cal. App. 4th 1051, 1071 (2013) ("The Legislature could not have contemplated imposing a duty to do more than to summon medical care as it imposed that duty on 'public employees,' such as prison authorities, generally.") (emphasis in original).

Thus, the question here is whether the Entity Defendants promptly summoned medical care for Decedent. See id. The Court finds that, taking Plaintiffs allegations as true, the Entity Defendants did not adequately summon medical care for Decedent. Despite the "obvious signs that [Decedent] was being beaten and assaulted for an appreciable amount of time as evidenced by the amount of blood in the cell and prior alerts from other inmates who heard the assault," Defendants opened the cell door without adequate personnel—medical or security—in the

vicinity.  (FAC ¶ 165.)  Accordingly, the Court finds that the Entity Defendants are not entitled to immunity under Cal. Gov. Code § 844.6.

Defendants also argue that Plaintiffs' claim fails because Plaintiffs merely assert conclusory allegations, rather than factual grounds for their failure to perform a mandatory duty claim.  (Motion at 11.)  Government Code § 815.6 – upon which Plaintiffs' base their third cause of action – is a statute that provides for public entity liability. It states:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Govt. Code. § 815.6.  California courts use a three-part test to determine if liability for a mandatory duty may be imposed upon a public entity: (1) an enactment must impose a mandatory duty; (2) the enactment must intend to protect against the kind of risk of injury suffered by the plaintiff; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered.  Dept. of Corp. v. Superior Court, 153 Cal. App. 4th 916, 922 (2007).

Here, Plaintiffs allege that Entity Defendants failed to perform a mandatory duty imposed by California Penal Code ("Penal Code") §§ 4001, 4002(a).  (FAC ¶¶ 120-126.)  Penal Code § 4001 requires that:

> Each county jail must contain a sufficient number of rooms to allow all persons belonging to either one of the following classes to be confined separately and distinctly from persons belonging to either of the other classes:
> 1. Persons Committed on criminal process and detained for trial;
> 2. Persons already convicted of crime and held under sentence;
> 3. Persons detained as witnesses or held under civil process, or under an order imposing punishment for a contempt.

Cal. Penal Code. § 4001.  Penal Code § 4002(a) mandates that:

> Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed upon civil process, shall not be kept or put in the same room, nor shall male and female prisoners, except spouses, sleep, dress or undress, bathe, or perform eliminatory functions in the same room. However, persons committed on criminal process and detained for trial may be kept or put in the same room with persons convicted and under sentence for the purpose of participating in supervised activities and for the purpose of housing, provided, that the housing occurs as a result of a classification procedure that is based upon objective criteria, including consideration of criminal sophistication, seriousness of crime charged, presence or absence of assaultive behavior, age, and other criteria that will provide for the safety of the prisoners and staff.

Cal. Penal Code. § 4002(a).

Plaintiffs allege that Entity Defendants violated the Penal Code when they housed Decedent, who had not yet been arraigned, in the same cell as Payne, a convicted felon. (FAC ¶¶ 46-48, 123.)  Further, Plaintiffs contend that CBDC was overcrowded which contributed to the violation of Penal Code § 4001.  (Id. ¶ 76.)  Defendants ignore these allegations in their Motion. (See Motion at 11.)  Accordingly, the Court finds that Plaintiffs sufficiently plead a claim for public entity liability for failure to perform a mandatory duty and **DENIES** the Motion as to Claim Three.

## D.  Claim Four: Eighth Amendment

Defendants move to dismiss Plaintiffs' claim for violation of eighth amendment rights against all Defendants on the grounds that the Eighth Amendment does not apply to pre-trial detainees.  (Motion at 12.)  Plaintiffs voluntarily dismiss their Eighth Amendment claim because Decedent was a pre-trial detainee.  (Opposition at 12.)  Accordingly, the Court **DISMISSES** Claim Four **WITHOUT LEAVE TO AMEND** and admonishes Plaintiffs for alleging a nonviable claim.

## E.  Claim Five: Monell Claim against the County and RCSD

Defendants move to dismiss Plaintiffs' Monell claim for unconstitutional policies, practices, and customs under Section 1983 against the Entity Defendants on the grounds that Plaintiffs have failed to plead facts showing that the alleged policies were "the moving force behind the constitutional violation."[2]  (Motion at 13.)  Plaintiffs argue that Defendants' analysis of the Monell claim is too narrow and that the claim is sufficiently plead.  (Opposition at 13.)

Monell claims are properly brought against governing entities for unconstitutional policies, practices, or customs.  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").  "[A] claim for municipal liability cannot be brought against an individual defendant."  Magdaleno v. County of Riverside, 2022 WL 1843977, at *3 (C.D. Cal. Apr. 14, 2022).  Purported Monell claims against individual sheriffs are "best construed as [] claim[s] for supervisory liability for deliberate indifference."  See Tapia Carmona v. County of San Mateo, 2019 WL 4345973, at *7 (N.D. Cal. Sept. 12, 2019).  A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

---

[2] Defendants raise a new argument in their Reply—that Claim Five should be dismissed on the grounds that the FAC does not allege any express formal or written policy.  (Reply at 12.) The Court will not consider Defendants' newly raised argument.

the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694.  Under <u>Monell</u>, municipalities are subject to damages under Section 1983 in three situations: when the plaintiff was injured pursuant to (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority."  <u>See</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123, 127 (1988) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167–68 (1970)); <u>see also</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481–83 (1986).  An "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981) (citation omitted).

When plaintiffs seek municipal liability based on an unofficially adopted practice or custom, the practice or custom "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'"  <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (quoting <u>Monell</u>, 463 U.S. at 691).  "Liability for improper custom may not be predicated on isolated or sporadic incidents."  <u>Id.</u>  Instead, "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  <u>Id.</u>  "While there is no per se rule for the amount of unconstitutional incidents required to establish custom under <u>Monell</u>, 'one or two incidents ordinarily cannot establish a . . . custom, while more incidents may permit the inference of a [custom], taking into account their similarity, their timing, and subsequent actions by the municipality.'"  <u>Wettstein v. County of Riverside</u>, 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020) (quoting <u>J.M. by & through Rodriguez v. County of Stanislaus</u>, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018)).  "To state a claim for municipal liability for unconstitutional custom, policy or practice, [a plaintiff] must identify a specific policy or custom and then articulate—through their factual allegations—the basis for concluding the identified policy or custom represents 'official policy'."  <u>M.S. v. City of Fontana</u>, 2017 WL 10545379, at *6 (C.D. Cal. April 13, 2017) (citing <u>Monell</u>, 463 U.S. at 691).

To state a <u>Monell</u> claim for an unconstitutional policy, practice or custom, a plaintiff must provide specific allegations that actually relate to, and arise out of, the instant dispute.  Plaintiff must also "allege some specific facts that would support the conclusion that the alleged policies exist."  <u>Luttrell v. Hart</u>, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020); <u>cf.</u> <u>Lapachet v. California Forensic Med. Grp.</u>, 313 F. Supp. 3d 1183, 1193 (E.D. Cal. 2018).

Here, Plaintiffs plead a long list of customs, policies, practices, and/or procedures that they argue directly and proximately resulted in Decedent's injuries and death.  (<u>See</u> FAC ¶¶ 134-144.)  Plaintiffs allege that the Entity Defendants regularly denied pretrial detainees and other inmates access to safe and appropriate housing; failed to train custody staff regarding administrative segregation of inmates; required inmates arrested for nonviolent offenses awaiting arraignment to be housed with known convicted violent felons; failed to take adequate security measures to protect detainees from harm; and denied inmates access to timely, appropriate, competent and necessary medical care.  (<u>Id.</u> ¶ 134.)  Plaintiffs specifically allege that the County

jails were overcrowded and understaffed during the events in question and that this, along with the fact that Defendants failed to ensure that Decedent was properly and appropriately assessed and classified prior to his cell placement, contributed to Decedent's injuries and death.  (Id. ¶¶ 139-142.)  Plaintiffs also allege dozens of incidents involving the deaths of inmates in County custody in recent years.  (Id. ¶¶ 51-84.)  Accordingly, the Court finds that Plaintiffs sufficiently plead a Monell claim for unconstitutional policies, practices, and customs under Section 1983 against the Entity Defendants and **DENIES** the Motion as to Claim Five.

### F.  Claim Six: Supervisory Liability

Defendants move to dismiss Plaintiffs' Claim Six for supervisory liability causing constitutional violations (failure to properly train, supervise and discipline under Section 1983) against Bianco, and Krachmer.  (Motion at 15.)  Defendants argue that because there is no respondeat superior liability against an entity under Section 1983, Claim Six fails.  (Id.)  Specifically, Defendants claim that Plaintiffs have not provided any factual information regarding how the individual named Defendants failed to train or failed to supervise their subordinates.  (Id. at 16.)

In a Section 1983 action like this one, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."  Hansen v. Black, 885 F.2d 642, 645–646 (9th Cir. 1989).  "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Id. at 646.  Supervisory liability may attach where a plaintiff alleges facts demonstrating the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others."  Starr, 652 F.3d at 1205–06 (internal citations, quotation marks, and alterations omitted).

Here, Plaintiffs allege that Bianco, as Sheriff, was charged with ensuring the safety of the inmates housed in all County jails, and promulgating the policies and procedures and allowance of the practices/customs pursuant to the acts of the County jails.  (FAC ¶ 20.)  Plaintiffs allege that Krachmer, as the Corrections Chief Deputy of the County jails, including the CBDC, was responsible for the general management and control of the County operations, with primary authority and responsibility for the operations, staff assignments, personnel supervision and training, and maintenance and auxiliary inmate services at the jail.  (Id. ¶ 22.)  Also, Plaintiffs allege that Bianco and Krachmer acted with deliberate indifference to the safety and protection of inmates in RCSD custody, including Decedent.  (Id. ¶¶ 150-154.)  Accordingly, the Court finds that Plaintiffs sufficiently plead a claim for supervisory liability and **DENIES** the Motion as to Claim Six.

//
//
//

---

**CIVIL MINUTES—GENERAL**            Initials of Deputy Clerk mg

## G. Claim Seven: Negligence

Defendants move to dismiss Plaintiffs' negligence claim on the grounds that Plaintiffs' allegations do not implicate any of the named Defendants directly, and do not allege that the named Defendants were the proximate cause of Decedent's death or injuries. (Motion at 17.) Defendants also argue that Entity Defendants are statutorily immune to liability pursuant to California Government Code Section 844.6. (Id.) Based on the reasoning above, the Court rejects Defendants' immunity argument as to the Entity Defendants.[3]

Plaintiffs fail to substantively oppose Defendants' arguments. (Opposition at 17-18.) To establish negligence, a party must allege "a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." Jones v. Nat'l R.R. Passenger Corp., Amtrak, 848 F. App'x 293, 295 (9th Cir. 2021) (citation and quotations omitted). Defendants argue that Plaintiffs' negligence claim is a "generic formulaic recitation of the elements." (Motion at 17.) The Court agrees. As outlined above for Plaintiffs' Fourteenth Amendment claims, the Court is unable to discern who, if anyone was responsible for the specific acts that led to Decedent's injuries and death. The Court finds that Plaintiffs fail to plausibly allege which defendants breached their duty, and which caused the resulting injury—without this, Plaintiffs negligence claim fails. Accordingly, the Court **DISMISSES** Claim Seven **WITH LEAVE TO AMEND**.

## H. Claim Eight: Bane Act

Defendants move to dismiss Plaintiffs' Bane Act claim on the grounds that the claim is conclusory and lacks the requisite substantive facts to show that Defendants acted intentionally. (Motion at 18.) Plaintiffs argue that Defendants' deliberate indifference to the medical needs and safety of Decedent satisfies the intentionality requirement of a Bane Act claim. (Opposition at 19.)

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). The Bane Act requires "a showing of the defendant's specific intent to violate the plaintiff's constitutional rights." Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018) (citing Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1042-43 (9th Cir. 2018)). However, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." Reese, 888 F.3d at 1045. "This specific intent inquiry centers on two questions: First, 'is the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, 'did the defendant commit the act in question

---

[3] Defendants briefly state that the individual named Defendants are shielded from liability under California Government Code § 820.2 but fail to expand on this argument in any substantive way. (See Motion at 17.) As such, the Court will not consider Defendants' immunity argument as to individual Defendants.

with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" <u>Luttrell</u>, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020) (citations omitted). "Specific intent does not require a showing that a defendant knew he was acting unlawfully; reckless disregard of the 'right at issue' is all that is necessary." <u>Id.</u> (quoting <u>Cornell v. City & Cnty. of San Francisco</u>, 17 Cal. App. 5th 766, 804, (2017), <u>as modified</u> (Nov. 17, 2017) (brackets omitted). "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." <u>Reese</u>, 888 F.3d at 1045 (citation omitted).

The Court has already explained how the FAC lacks the requisite specificity in what actors allegedly did and did not do, and why their acts violated the Constitution. As currently pled, the FAC lacks specific allegations that any Defendants "acted with the 'particular purpose' of depriving [Plaintiff]" of a constitutional right. <u>Cornell</u>, 17 Cal. App. 5th at 804. If Plaintiffs choose to file an amended complaint to address the deficiencies outlined above, they must also make a stronger showing of specific intent involving one or more actors in order to state a claim for relief under the Bane Act. Accordingly, the Court **DISMISSES** Claim Eight **WITH LEAVE TO AMEND**.

## I.   Count Nine: Declaratory Relief

Defendants seek to dismiss Plaintiffs' ninth claim for declaratory relief, which states "Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint." (FAC ¶ 185.) Defendants contend that Plaintiffs request for declaratory relief is inapplicable to this matter and that Plaintiffs have not established the applicability of the Declaratory Relief Act to the instant action. (Motion at 19-20.)

In order to seek declaratory relief, a plaintiff must "show that he has sustained or is immediately in danger of sustaining some direct injury . . . and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983). In <u>Lyons</u>, the Supreme Court denied injunctive relief where the plaintiff did not sufficiently demonstrate a threat of future injury. <u>Id.</u> at 108. In that case, which dealt with strangleholds during police traffic stops, the plaintiff made no allegation that "strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped." <u>Id.</u> The Court further found that "it is surely no more than speculation to assert that either Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest." <u>Id.</u> at 108.

Here, Plaintiffs fail to persuade the Court that their declaratory relief claim should not be dismissed—Plaintiffs do not substantively oppose Defendants' argument or explain why this claim is applicable here. (Opposition at 20.) The Court finds that Plaintiffs have failed to state a claim for declaratory relief. Accordingly, the Court **GRANTS** the Motion as to the declaratory relief claim and **DISMISSES** the claim **WITH LEAVE TO AMEND**.

## V.   CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1.  Defendants' Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2.  Claim One (violation of the Fourteenth Amendment under Section 1983) is **DISMISSED WITH LEAVE TO AMEND**.

3.  Claim Two (deprivation of the right to familial relationship under Section 1983) is **DISMISSED WITH LEAVE TO AMEND**.

4.  Claim Four (Eighth Amendment) is **DISMISSED WITHOUT LEAVE TO AMEND**.

5.  Claim Seven (negligence) is **DISMISSED WITH LEAVE TO AMEND**.

6.  Claim Eight (Bane Act) is **DISMISSED WITH LEAVE TO AMEND**.

7.  Claim Nine (declaratory relief) is **DISMISSED WITH LEAVE TO AMEND**.

8.  The Motion is **DENIED** as to Claim Three (public entity liability), Claim Five (Monell), and Claim Six (supervisory liability).

9.  Plaintiffs may file an amended complaint no later than **March 15, 2024**.

10. The Court **VACATES** the March 4, 2024 hearing.


**IT IS SO ORDERED.**